IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

DOROTHY L. ALEXANDER                                            PLAINTIFF

VS.                                          CIVIL ACTION NO. 3:07cv640-DPJ-JCS

THE BROOKHAVEN SCHOOL DISTRICT and
LEA BARRETT, Superintendent                                    DEFENDANTS

---

MEMORANDUM IN SUPPORT OF FRCP 12(b)(6) MOTION TO DISMISS
FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED BY
DEFENDANTS BROOKHAVEN SCHOOL DISTRICT AND LEA BARRETT

---

Defendants Brookhaven School District ("BSD") and Superintendent Lea Barrett ("Barrett")

file this memorandum in support of their FRCP 12(b)(6) Motion to Dismiss for Failure to State a

Claim Upon Which Relief Can Be Granted.  Plaintiff Dorothy Alexander ("Plaintiff"), a former

school administrator, claims she is entitled to damages in connection with the non-renewal of her

one-year employment contract.  She purports to assert identical claims against both Defendants

based on BSD's decision not to renew her contract, including: (1) race-based discrimination and

retaliation under Title VII of the Civil Rights Act ("Title VII"); (2) violations of the First and

Fourteenth Amendment under 42 U.S.C. § 1983 ("section 1983"); and (3) failure to comply with the

Equal Pay Act ("EPA").  Based on a review of Plaintiff's First Amended Complaint ("FAC"), it is

unclear whether Plaintiff seeks to recover from Barrett personally (i.e., "individual" capacity), or

merely as BSD's representative (i.e., "official" capacity).  As the Court is aware, an "official"

capacity suit against a public employee is actually a suit against the public entity.  To the extent

Plaintiff asserts causes of action against BSD and Barrett in her "official" capacity, the official-

capacity causes against Barrett are duplicative under Kentucky v. Graham, 437 U.S. 159, 166

(1985), and therefore unnecessary.  Under Graham, any official-capacity claims against Barrett

should be dismissed.  473 U.S. at 167 n.14.  To the extent Plaintiff seeks to recover from Barrett

personally (i.e., in her "individual" capacity), she cannot do so as a matter of law for the reasons

discussed herein. Finally, Plaintiff's claims against BSD fail as a matter of law as set forth below, and must be dismissed.

## I.      INTRODUCTION

Plaintiff was formerly employed by BSD as an assistant superintendent of schools. She alleges BSD and Barrett elected not to renew her employment contract for several reasons, including her race, statements she made in reporting alleged abuse involving a student (and her status as a "potential" witness in the civil lawsuit filed on behalf of the student), and her opposition to "discriminatory" treatment of other employees. In short, the FAC is an amalgam of unsupported and conclusory assertions. There are virtually no fact allegations contained therein as to Barrett. As discussed infra, Plaintiff fails to state any claims upon which relief can be granted under Rule 12(b)(6) and Defendants must be dismissed from this lawsuit with prejudice.

## II.     BACKGROUND AND FACTS

Plaintiff's employment contract was not renewed by BSD because of the manner in which she performed her job duties. Race played no role in the decision which was based, in part, on Plaintiff's improper conduct related to BSD's investigation into teacher misconduct involving a student. Plaintiff acknowledges the non-renewal notice she received from BSD cited her actions in connection with the investigation as one of the bases for BSD's decision not to renew.

### A.      Fact Allegations And Assertions

Plaintiff alleges that on July 1, 1987 she was promoted by BSD to assistant superintendent of schools, a post she occupied on February 28, 2005 when she received notice that BSD was not going to renew her contract for the upcoming year. (FAC ¶¶5-6). She alleges that no other administrators were non-renewed, and that no other non-African-American female administrators were selected for non-renewal. (FAC ¶7). Plaintiff asserts BSD non-renewed her for "three" reasons: (1) she is African-American; (2) she investigated and reported sexual misconduct by a BSD teacher and became a "potential" witness in the civil lawsuit against BSD; and (3) she

"complained" about unequal pay for African-American administrators.[1]  (FAC ¶9).  She asserts the reasons for her non-renewal were pretext, and that three (3) white administrators who violated BSD's personal conduct policy, were renewed.[2]  (FAC ¶11).  Plaintiff concludes, "thus, the primary reason" for non-renewal "was that she was [sic] an African-American administrator."  (FAC ¶12).

Plaintiff alleges she learned of accusations that a BSD teacher was abusing a student during the 2002-03 school year.  She alleges she investigated the matter, and she sent the accusations and her investigation results to the teacher's principal and BSD superintendent.  (FAC ¶13).  She asserts state law requires her to report suspected abuse and immunizes her from adverse consequences.  (FAC ¶¶14-16).  She alleges she was a "potential" witness in the related civil lawsuit brought on the student's behalf.  (FAC ¶17).  She alleges BSD's non-renewal notice states one of the reasons for its decision was her "reporting the unlawful conduct, and in allegedly speaking to the parents of the involved children" as reasons for non-renewal.  (FAC ¶18).

Without any details, Plaintiff alleges vaguely that she also protested a disparity in her salary and salaries of similarly situated "white" administrators.  (FAC ¶19).  She further contends she protested, in an unspecified manner, unspecified "disparate, discriminatory" treatment of African-American employees.  (FAC ¶20).  Plaintiff asserts her protests were an additional reason for her non-renewal.  (FAC ¶21).  Despite the inadequate allegations, Defendants assume for purposes of this motion only that Plaintiff protested some BSD policy.

## B.    Purported Causes of Action Asserted

Plaintiff purports to assert two Title VII claims (discrimination and retaliation), a claim under 42 U.S.C. § 1983 for violations of the First and Fourteenth Amendment, and a claim under the Equal Pay Act for a supposed salary disparity with "white" male administrators.

Claim I:  Title VII Termination.  Plaintiff asserts race was "one primary reason" for her non-renewal, and she seeks reinstatement and damages.  (FAC ¶¶23-25).  Without fact allegations, she

---

1 For reasons unknown, Plaintiff alleges that in 1989, the then superintendent recommended her non-renewal but BSD did not approve the recommendation.  (FAC ¶10).  This allegation is completely irrelevant to the instant litigation.
2 It is unclear whether Plaintiff is alleging the reasons offered in connection with the 1989 recommendation for non-renewal or the reasons offered for the 2005-06 non-renewal were pretext.

baldly asserts Defendants' "repeated efforts to purge African-American administrators from their employment" warrant punitive damages. (FAC ¶26).

Claim II: Section 1983 – Violations of First And Fourteenth Amendment Rights. Plaintiff contends the non-renewal decision violated the First and Fourteenth Amendments. (FAC ¶34). She asserts she was (1) entitled to speak out about the purported sexual abuse, and (2) affirmatively obliged to report it. (FAC ¶¶27-30). She asserts she had an affirmative obligation to testify (i.e., in the student's civil lawsuit) about the investigation she conducted pursuant to her "official" duties. (FAC ¶¶28-30). She asserts she was non-renewed, in part, as retaliation for statements she made about the accused teacher and because of her "potential" witness status.[3] (FAC ¶32).

Claim III: Title VII Retaliation. Plaintiff asserts she was also non-renewed for opposing "unlawful" practices, including alleged salary discrepancies, unidentified discrimination, and an unidentified "failure to follow State law." (FAC ¶37). She also contends her non-renewal was retaliation for opposing unidentified "employment and administrative practices." (FAC ¶40).

Claim IV: Equal Pay Act. Plaintiff asserts that "[f]or years, [she] was not paid on an equal basis for work she performed as compared to White male administrators at MSD," and that she is entitled to compensation for alleged "unlawful, unequal pay disparities." (FAC ¶¶41-42).

## III.   **LEGAL DISCUSSION**

Accepting as true the fact allegations, Defendants are entitled to a dismissal of all Plaintiff's claims as follows: (1) under Title VII and the EPA, Plaintiff cannot maintain individual-capacity claims against Barrett; (2) under the First Amendment, Plaintiff cannot maintain any claims as she did not engage in protected speech activity; (3) under the Fourteenth Amendment, Plaintiff cannot maintain any claims as she has no protected property interest in continued employment, (4) under the Fourteenth Amendment, assuming Plaintiff could show a protected property interest (which she cannot), she fails to allege conduct that might give rise to substantive or procedural due process claims, nor can she allege an injury-causing official policy or entrenched custom as she must to

---

3  Plaintiff claims she is entitled to punitive damages for the "bad faith" violation of her free speech rights and the failure to recognize her obligation to investigate and report sexual harassment. (FAC ¶36).

impose liability on BSD as an entity, (5) under Title VII, Plaintiff cannot maintain any claims as she fails to allege facts from which one could reasonably infer intentional retaliation or discrimination motivated by racial animus, <u>and</u> (6) under the EPA, Plaintiff cannot maintain any claims as she does not allege facts from which it can be reasonably inferred that BSD acted in contravention of applicable law.

A court assessing a motion to dismiss brought under Rule 12(b)(6) or 12(c) applies the same standard in assessing the plaintiff's claims. <u>St. Paul Ins. Co. Of Bellaire, Tex. v. AFIA Worldwide Ins. Co.</u>, 937 F.2d 274, 279 (5th Cir. 1991). A court looks to the pleadings and accepts as true those allegations <u>which are well-pleaded</u> and views them favorably towards the plaintiff. <u>Jones v. Geninger</u>, 188 F.3d 322, 324 (5th Cir. 1999). A court may also take into account any judicially noticed facts. <u>Herbert Abstract v. Touchstone Properties, Ltd.</u>, 914 F.2d 74, 76 (5th Cir. 1990). Under both rules, where a plaintiff is unable to or simply does not assert a set of facts that would support her claim, she fails to state a claim upon which relief may be granted. <u>Highland Falls-Fort Montgomery Cent. School Dist. v. United States</u>, 48 F.3d 1166, 1169 (Fed. Cir. 1995).

### A.   As A Matter Of Law, Barrett Cannot Be Personally Liable (In Her Individual Capacity) Under Title VII Or The Equal Pay Act

Notwithstanding Plaintiff's failure to adequately plead Title VII and/or EPA violations generally, as discussed in Sections E. and F. <u>infra</u>, the individual-capacity claims asserted under these statutes against Barrett must be dismissed as a matter of law.

### 1.   Title VII Claims For Race Discrimination And Retaliation

As a matter of law, Barrett (the superintendent of schools) cannot be sued personally as she was <u>not</u> the employer in this case. Only "employers" can be liable under Title VII. <u>Grant v. Lone Star Co.</u>, 21 F.3d 649, 652-53 (5th Cir. 1994); <u>Garcia v. Elf Atochem North America</u>, 28 F.3d 446, 451 n.2 (5th Cir. 1994) abrogated on other grounds by <u>Oncale v. Sundowner Offshore Services, Inc.</u>, 523 U.S. 75, 118 S.Ct. 998 (1998). Fellow employees, including co-workers and <u>supervisors</u>, are not subject to individual-capacity Title VII claims, and they must be dismissed when sued personally for alleged Title VII violations. <u>Dandrige v. Chromcraft Corp.</u>, 914 F.Supp. 1396, 1404

(N.D. Miss. 1996) ("The Fifth Circuit law is clear – supervisors cannot be held <u>personally</u> liable under Title VII.").[4]  Plaintiff alleges (correctly) that BSD was the employing entity responsible for deciding her employment status.  (FAC ¶¶5, 8-10, 19-21).  She accurately identifies Barrett as the superintendent of schools.  Plaintiff cannot maintain Title VII causes against Barrett personally. Accordingly, Claims I and III must be dismissed as to Barrett <u>with</u> prejudice.

### 2.    The Equal Pay Act Claim

Plaintiff cannot assert an EPA claim against Barrett for the reasons noted above (i.e., BSD, <u>not</u> Barrett, was her "employer").  The EPA imposes liability only on "employers" for gender-based salary discrepancies.  <u>See</u> 29 U.S.C. § 203(d) ("any person acting directly or indirectly in the interest of an employer in relation to an employee").  In the Fifth Circuit Court, an individual qualifies as an employer only if she "effectively dominates the [corporate entity's] administration or otherwise acts, or has the power to act, on behalf of the corporation vis-a-vis its employees," or if she "independently exercised control over the work situation."  <u>Donovan v. Sabine Irrigation Co., Inc.</u>, 695 F.2d 190, 194-95 (5th Cir. 1983).  Barrett is not an "employer" under the EPA as a matter of law, nor does Plaintiff make any such allegation.

In Mississippi, school boards are vested with final authority for ultimate employment decisions, such as dismissal and non-renewal.  <u>Hattiesburg Municipal Sep. School Dist. v. Gates</u>, 461 So.2d 730, 738 (Miss. 1984) ("The Board of Trustees is required by statute to make the ultimate employment decision on all teacher dismissal and non-renewal cases.").  School boards also assign the salaries of licensed employees, including <u>any</u> superintendents.  <u>See</u> Miss. Code Ann. § 37-9-37 ("The amount of the salary to be paid any superintendent, principal or licensed employee shall be fixed by the school board, ....").  A school superintendent, whose primary statutory

---

4  <u>See, e.g.</u>, <u>Ackel v. National Communications, Inc.</u>, 339 F.3d 376, 382 n.1 (5th Cir. 2003) (dismissing Title VII claims against general manager and supervisor as "[i]ndividuals are not liable under Title VII in either their individual or official capacities"); <u>Huckabay v. Moore</u>, 142 F.3d 233, 241 (5th Cir. 1998) (county commissioner was not an "employer" and therefore could not be individually liable under Title VII, even though he was vested with near total executive authority within precinct); <u>Thomas v. Choctaw Management/Services Enterprise</u>, 313 F.3d 910, 911 (5th Cir. 2002) (affirming order granting motion to dismiss filed by supervisor because he could not be an "employer" for Title VII purposes as a matter of law).

responsibility is to <u>implement</u> decisions made by the school board, possesses limited enumerated statutory powers, authorities and duties. <u>See</u> Miss. Code Ann. § 37-9-14.[5]

District courts have recognized that academic administrators and supervisors are not "employers" subject to EPA liability merely because they are responsible for managing daily operations. <u>See, e.g.</u>, <u>Geller v. University of Mississippi</u>, 2001 WL 1079006 *1, *2 (N.D. Miss. 2001) (defendant, a university dean and plaintiff's former supervisor, was not an "employer" as final employment decisions, including salary decision, came from defendant's superiors and he exercised no direct control over plaintiff's employment status); <u>Schuth v. LSU Medical Center</u>, 1989 WL 65566 (E.D. La. 1989) (granting motion to dismiss on Equal Pay Act claims filed against individual defendants, head college and medical school administrators, because plaintiffs were employed by the school, there was "no employer-employee relationship" between plaintiffs and individual defendants). Because school boards possess the statutory authority to make final decisions as to dismissals and non-renewals and to fix the salaries of all licensed employees, Barrett is entitled to judgment as to Claim IV <u>with</u> prejudice.

**B.      Plaintiff Cannot Maintain A Section 1983 Cause For Purported Violations Of The First Amendment Free Speech Guarantee**

The First Amendment protects the right of a public employee, in certain circumstances, to speak as a citizen addressing matters of public concern.[6] <u>Garcetti v. Ceballos</u>, 126 S.Ct. 1951, 1957 (2007); <u>Pickering v. Pickering v. Board of Ed. of Tp. High School Dist. 205, Will County</u>, 391 U.S. 563, 568 (1968). The First Amendment, however, does not "empower public employees to constitutionalize the employee grievance" or bring a cause of action for "every statement a public employee makes in the course of doing his or her job." <u>Garcetti</u>, 126 S.Ct. at 1959, 1962 (<u>citing</u> <u>Connick v. Myers</u>, 461 U.S. 138 (1983)). In <u>Garcetti</u>, the Supreme Court explained "[r]estricting speech that owes its existence to a public employee's professional responsibilities does not infringe

---

5  Miss. Code Ann. § 37-9-14 ("Responsibilities and powers of superintendent") requires superintendents generally to "administer the schools within [the] district and to implement the decisions of the school board," and identifies, with specificity, "all other powers, authority and duties" conferred on superintendents by statute.

6  "Whether the speech at issue is on a matter of public concern is a question of law that must be determined by the court." <u>Salge v. Edna Independent School Dist.</u>, 411 F.3d 178, 184 (5th Cir. 2005).

any liberties the employee might have enjoyed as a private citizen. It simply reflects the exercise of employer control over what the employer itself has commissioned or created." Garcetti, 126 S.Ct. at 1961 (citing Rosenberger v. University of Virginia, 515 U.S. 819, 833 (1995)).

Accordingly, a public employee engages in protected speech activity only when: (1) she is speaking as a citizen; (2) her statement involves a matter of public concern; and (3) the employer lacks adequate justification for treating the employee differently from any other member of the general public as a result of the statement. Garcetti, 126 S.Ct. at 1958; see also Houlihan v. Sussex Tech. School Dist., 461 F.Supp.2d 252, 260 (D. Del. 2006); Ryan v. Shawnee Mission Unified School Dist., 437 F.Supp.2d 1233, 1247-48 (D. Kan. 2006).[7] To determine whether a statement rises to the level of protected activity, the inquiry focuses initially on the speaker's role at the time of the alleged expressive activity. Williams v. Dallas Ind. School Dist., 480 F3d 689, 694 (5th Cir. 2007). When a public employee makes a statement pursuant to her official duties, the employee is not speaking as a citizen and her activity is not protected activity under the First Amendment. Garcetti, 126 S.Ct. at 1960; Houlihan, 461 F.Supp.2d at 260.

Houlihan makes clear that Plaintiff's alleged reporting of suspected abuse in this case is not protected activity under the First Amendment. In Houlihan, a school psychologist subject to non-renewal brought First Amendment claims against her school district employer. 461 F.Supp.2d at 255. She claimed she was non-renewed because she repeatedly made reports of potential IDEA non-compliance to district officials. Id. at 256. The plaintiff alleged that her reports of non-compliance, which she claimed were the basis for her non-renewal, constituted protected activity. The district court disagreed holding the plaintiff made the reports pursuant to her "official" duties, therefore they were not protected speech activity entitled to First Amendment protection. Houlihan,

---

The Fifth Circuit has recognized that in situations where a close working relationship among employees is essential to fulfilling the responsibilities of the allegedly aggrieved public employee (i.e. like the one between a superintendent and assistant superintendent), the government's interest more easily outweighs the employee's interest as a private citizen. Kinsey v. Salado Indep. Sch. Dist., 950 F.2d 988, 994 (5th Cir. 1992); McBee v. Jim Hogg County, Tex., 730 F.2d 1009, 1016-17 (5th Cir. 1984) (en banc). One court has articulated the policy considerations thusly, "[h]igh-level officials must be permitted to accomplish their organizational objectives through key deputies who are loyal, cooperative, willing to carry out their superiors' policies, and perceived by the public as sharing their superiors' aims; this is true whether or not those officials are elected." Hall v. Ford, 856 F.2d 255, 263 (D.C. Cir. 1988).

461 F.Supp.2d at 260-261. Because the plaintiff's reports were related to "the manner in which [she] carried out her job," she was unable to show that she was speaking as a citizen and her speech was therefore not "protected activity." Houlihan, 461 F.Supp.2d at 261.

In Williams v. Dallas Ind. School Dist., supra, the Fifth Circuit Court of Appeals affirmed summary judgment in favor of a school district sued for First Amendment retaliation. The plaintiff, a coach for the district, submitted a memo to his principal outlining budget concerns. Williams, 480 F.3d at 694. The court broadly construed the phrase "action taken in the course of official duties," holding the coach acted pursuant to his official duties, even though he was not required to submit budget memoranda. Id. Thus, under Garcetti and Williams, speech in the course of one's job performance constitutes an action taken in one's official capacity, even when it is not required as part of one's job description. Williams, 480 F.3d at 693. Garcetti aptly notes that a contrary holding would "commit state and federal courts to a new, permanent, and intrusive role, mandating judicial oversight of communications between and among government employees and their superiors in the course of official business," adding:

> When an employee speaks as a citizen addressing a matter of public concern, the First Amendment requires a delicate balancing of the competing interests surrounding the speech and its consequences. When, however, the employee is simply performing his or her job duties, there is no warrant for a similar degree of scrutiny.

Garcetti, 126 S.Ct. at 1961 (emphasis added). Importantly, the Court explained that a contrary finding "demand permanent judicial intervention in the conduct of governmental operations to a degree inconsistent with sound principles of federalism and the separation of powers." Id.

Per the allegations, Plaintiff's First Amendment claim is based on her student abuse reporting activity. She alleges she was subject to non-renewal, in part, for statements she made pursuant to her official reporting duties as a school administrator.[8] (FAC ¶18). She asserts she was entitled to speak out about the purported sexual abuse and affirmatively obliged to report the abuse.

---

8 To the extent Plaintiff seeks to base her First Amendment claim on her status as a "potential" witness, she does not state a claim for a free speech violation as there is no actual speech (see Garcetti, 126 S.Ct. at 1958 (requiring speech for actionable First Amendment claim)), there is only the allegation that Plaintiff was a "potential" witness.

(FAC ¶¶27-30). Thus, the allegations demonstrate that Plaintiff's reporting activities flowed directly from her BSD position. Therefore, like the plaintiffs in Garcetti, Williams and Houlihan, the Plaintiff's statements, allegedly made pursuant to her official duties, do not qualify as protected First Amendment activity. See, e.g., Garcetti, 126 S.Ct. at 1960; Houlihan, 461 F.Supp.2d at 260; Williams, 480 F.3d at 693-94. Based on the legal authorities cited above, Plaintiff cannot show she engaged in protected activity and she is therefore unable to state a First Amendment claim against Defendants. As such, this claim must be dismissed with prejudice.

### C. Plaintiff Cannot Maintain A Section 1983 Cause Based On Her Non-Renewal Under The Fourteenth Amendment As There Is No Protected Property Interest

Plaintiff purports to assert a section 1983 claim under the Fourteenth Amendment based on the non-renewal of her employment contract. Any such claim fails because Plaintiff does not have a protected property interest in continued employment under the circumstances.

As a threshold matter, in order to succeed on a substantive or procedural due process claim under the Fourteenth Amendment, a plaintiff must demonstrate a protected property interest in continued employment. See Cleveland Bd. of Education v. Loudermill, 470 U.S. 532, 538 (1985); Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972). A protected property can only arise where the plaintiff had a legitimate claim of entitlement to her position of employment (i.e., a claim that would limit the ability of her employer to refuse to renew her employment). Roth, 408 U.S. at 577. Whether a property interest based on a legitimate claim of entitlement exists is determined by state law. Loudermill, 470 U.S. at 538-39 (courts determine whether a plaintiff possesses a protected property interest based on "existing rules or understandings that stem from an independent source such as state law ...."). Generally, a property interest may be secured by a specific statute or provision, a written contract, a mutually explicit understanding between the employee and the institution, or a specific practice the institution maintains. Perry v. Sindermann, 408 U.S. 593, 601-02 (1972).

Importantly, Plaintiff does not allege any protected property interest. In any event, the fact allegations clearly show she does not have a protected interest under the Fourteenth Amendment.

Plaintiff alleges that she worked pursuant to an employment contract with a finite term and it was

not renewed at the end of its term. (FAC ¶¶5-6). As such, the employment contract does not confer

a protected property interest in continued employment. See, e.g., Pruett v. Dumas, 914 F.Supp. 133,

137-38 (N.D. Miss. 1996) (school board and individual members were entitled to judgment as a

matter of law against school librarian who asserted claims based on the violation of her Fourteenth

Amendment rights based on non-renewal because she did not have a property interest in continued

employment as would support such a claim).[9]  In Pruett v. Dumas, supra, the district court looked to

that part of the Mississippi Code which governs non-renewals of certified school employees (i.e.,

the state law that determines whether a property interest exists).  The Pruett court explained that,

under the applicable statutes, school districts are not required to demonstrate good cause in

justifying a contract non-renewal decision.[10]  See Miss. Code Ann. §§ 37-9-101 to 37-9-111;

Mississippi Employment Sec. Comm. v. Philadelphia Municipal Separate School Dist., 437 So.2d

388, 396-97 (Miss. 1983).  Thus, while a school employee may possess a property interest for the

duration of her employment contract, any such interest ends when the contract term ends.[11]  Under

the applicable law, therefore, Plaintiff is simply unable to show a protected property interest in

continued employment.

　　　　Because she has no protected property interest in her employment contract beyond the end

of its finite term, Plaintiff could not be deprived of a protected Fourteenth Amendment property

interest by the non-renewal decision as a matter of law.

---

9  See, e.g., Carey v. Aldine Independent School Dist., 996 F.Supp. 641, 652 (S.D. Tex. 1998) (school board did not violate non-renewed teacher's Fourteenth Amendment rights because teacher had no property interest in continued employment).

10  The court emphasized that the legislature did not intend to create or otherwise establish "a system of tenure." Pruett, 914 F.Supp. at 137 (citing Miss. Code Ann. § 37-9-101).

11  While Pruett involved a librarian, an assistant superintendent is subject to the same statutes as both are "school employees" as defined by the Mississippi Code. See Miss. Code § 37-9-103.

**D.      Assuming Plaintiff Has A Property Interest, Which She Does Not, She Fails To Allege Fourteenth Amendment Due Process Violations**

Even if Plaintiff could maintain a claim based on the alleged violation of her Fourteenth Amendment rights, she fails to sufficiently allege any such claim.

### 1.      Procedural Due Process:  Plaintiff Does Not Allege Any Procedural Due Process Violation

Procedural due process refers to a person's right to be adequately notified of proceedings (and the opportunity to be heard at the proceedings) that could potentially adversely impact life, liberty or property rights.  With respect to procedural due process claims, "the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law." Zinermon v. Burch, 494 U.S. 113, 125-26 (1990) (citations omitted); Carey v. Piphus, 435 U.S. 247, 259 (1978) ("Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property").  Thus, the central issue in any procedural claim would not be whether Plaintiff was subject to non-renewal, but whether she received notice and an opportunity to be heard in connection with the non-renewal. There are no allegations which, taken as true, suggest Plaintiff was denied procedural due process here.[12]  In fact, Plaintiff's assertions in the FAC undermine any such purported violation as Plaintiff admits she received notice of the non-renewal.  (FAC ¶6).  Therefore, Plaintiff does not allege a violation of procedural due process.

---

[12]  A non-renewal decision involving a school administrator, like the one here, is subject to the parameters in the Education Employment Procedures Law ("EEPL").  Miss. Code Ann. § 37-9-101 et seq.  Under the EEPL's plain language, an employee is required to request a hearing.  Miss. Code Ann. § 37-9-109.  Plaintiff, an administrator who should have been intimately familiar with personnel procedures, does not contend she was ignorant of this requirement. Given the allegations, there is nothing that suggests Plaintiff asserts, or could assert, a Fourteenth Amendment procedural due process claim.  See, e.g., Rathjen v. Litchfield, 878 F.2d 836, 839-40 (5th Cir. 1989) (generally, a person waives his right to complain of due process violations when he fails to take advantage of procedures made available).

2.   **Substantive Due Process:  Plaintiff Does Not Allege A Substantive Due Process Violation**

Substantive due process refers to the guarantee that life, freedom and property cannot be taken without appropriate governmental justification, regardless of the procedures involved in the taking.  As noted above, the "threshold requirement of any due process claim, be it substantive or procedural, is a showing that the government deprived the plaintiff of a liberty or property interest." Pruett v. Dumas, supra, 914 F.Supp. at 137 (N.D. Miss. 1996) (citing Moore v. Miss. Valley St. Univ., 871 F.2d 545, 548 (5th Cir. 1989)).[13]  "To succeed with a claim based on substantive due process in the public employment context, the plaintiff must show two things:  (1) that he had a property interest/right in his employment, and (2) that the public employer's termination of that interest was arbitrary or capricious."  Moulton v. City of Beaumont, 991 F.2d 227, 230 (5th Cir. 1993).  Proof of a substantive due process violation requires evidence of state action that "shocks the conscience."  Rochin v. California, 342 U.S. 165, 172-173 (1952).

Plaintiff cannot maintain a substantive due process claim for the reasons above (i.e., as a threshold matter she cannot show a protected property interest in her continued employment with BSD).  Additionally, Plaintiff fails to allege any facts from which one could infer her non-renewal was "arbitrary or capricious" or shocking to the conscience.  As a matter of law, conclusory allegations and unwarranted factual deductions will not suffice to avoid a motion to dismiss.  United States ex rel. Willard v. Humana Health Plan of Texas Inc., 336 F.3d 375, 379 (5th Cir. 2003). Rather, a plaintiff must plead with a certain level of specificity the relevant operative facts.  See generally Holdiness v. Stroud, 808 F.2d 417, 424 (5th Cir. 1987).  Bald and conclusory allegations are inadequate and they render a poorly plead claim vulnerable to dismissal.  Id.  Distilled to its essence, the FAC is an amalgam of vague fact assertions coupled with a handful of unsupported

---

[13] In section 1983 actions for violations of the right to due process a plaintiff must first identify a life, liberty, or property interest protected by the Fourteenth Amendment, as well as state action that caused the deprivation. Blackburn v. City of Marshall, 42 F.3d 925, 935 (5th Cir. 1995).  Absent a protected life, liberty, or property interest no right to due process exists.  Moore v. Mississippi Valley State University, 871 F.2d 545, 548 (5th Cir. 1989).   If a plaintiff cannot make this showing, "no right to due process can accrue."  Pruett, 914 F. Supp. at 137.

legal conclusions. Plaintiff does not allege facts supporting a substantive due process violation.

Accordingly, in addition to the reasons noted above, this claim should properly be dismissed.

### 3. Plaintiff Does Not Identify, And Cannot Identify, An "Illegal" BSD Official Policy Or Entrenched Custom

Lastly, any purported claims against BSD (and official-capacity claims against Barrett) fail

as a matter of law because Plaintiff fails to identify an injury-causing "illegal" official policy or

entrenched custom as is required to impose liability on a school district.

As to municipalities and other political subdivisions, like local school boards, the theory of

respondeat superior does not apply in section 1983 actions.[14]  Monell v. Department of Social

Services, 436 U.S. 658, 694 (1978); Worsham v. City of Pasadena, 881 F.2d 1336, 1339 (5th Cir.

1989). Like municipalities, school boards cannot be sued under section 1983 unless a plaintiff

sufficiently demonstrates injury from an official policy or custom, as distinguished from mere

tortious conduct. See, e.g., Beattie v. Madison County School Dist., 254 F.3d 595, 600 n.2 (5th Cir.

2001).[15] "Only upon a demonstration of a policy or custom to violate the constitution, which is not

to be confused with proof of policies supporting tortious conduct, can the municipality be held

liable under section 1983." Brown v. City of Hazlehurst, 741 So.2d 975, 981 (Miss. Ct. App.

1999). The court re-emphasized that a policy or custom must be identified with specificity, stating:

> [A] plaintiff must allege that the custom or policy served as the moving force behind the constitutional violation, or that her injuries resulted from the execution of the official policy or custom. The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts.

Brown, 741 So.2d at 981. Absent injuries caused by an illegal custom or policy, a governmental

entity is immunized from liability. Williams v. Lee County Sheriff's Dept., 744 So.2d 286, 298-99

---

14 "Section 1983 is not itself a source of substantive rights; it merely provides a method for vindicating already conferred federal rights." Bauer v. Texas, 341 F.3d 352, 357 (5th Cir. 2003). A § 1983 plaintiff must allege an independent substantive basis for relief. She must first identify a protected life, liberty, or property interest, and then show how government action resulted in the interest's deprivation. Baker v. McCollan, 443 U.S. 137, 140 (1979).
15  "Under § 1983, Beattie may sue a local governing body, such as the school district, or the school board as policymaker for the district, for monetary, declaratory, or injunctive relief if the challenged action implements or executes a policy officially adopted by that body's officers. Neither the school board nor the school district can be liable for the actions of Acton and Jones, if impermissible, under a respondeat superior theory."

(Miss. 1999). In the Fifth Circuit, to qualify as a custom or policy the practice must have occurred for so long, or so frequently, that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice. Webster v. City of Houston, 735 F.2d 838, 842 (5th Cir. 1984).

Construed liberally, the FAC does not allege an injury-causing BSD custom or policy. Without supporting fact allegations, Plaintiff blindly asserts she is entitled to punitive damages due to "repeated efforts to purge African-American administrators from their employment" warrant punitive damages. (FAC ¶26). This assertion is exactly the type of conclusory statement the Brown court held insufficient to show a custom or policy. Furthermore, the non-renewal decision at issue was a single occurrence, and therefore not a policy or custom as those terms are interpreted by the judiciary. See generally Bennett v. City of Slidell, 728 F.2d 762, 768 n.3 (5th Cir. 1984), cert. denied, 472 U.S. 1016 (1985) "Isolated violations are not the persistent, often repeated constant violations that constitute custom and policy" as required for section 1983 liability.[16] Plaintiff cannot allege specific facts demonstrating a policy or custom because there was no such policy or custom. Accordingly, Plaintiff cannot state a section 1983 claim against BSD (or Barrett in her official capacity) and the Court should grant dismissal.

### E.    The Fact Allegations Are Insufficient To State Causes Under Title VII Against Defendant BSD (Counts I and III) As A Matter Of Law

Any purported Title VII claims fail because Plaintiff does not allege facts from which it can be inferred she was intentionally retaliated against or discriminated against.[17]

---

16  See, e.g., Berry v. McLemore, 670 F.2d 30, 32 (5th Cir. 1982) (single, improper arrest is not the kind of systematic, municipally supported abuse that constitutes custom); Lopez v. City of Austin, 710 F.2d 196, 198 (5th Cir. 1983) (failure to promote and grant merit increase to person who had filed grievance against his employer was an isolated act, not part of a custom denying merit increases to those who file EEOC complaints).

17  To be clear, Defendants do not maintain the retaliation and discrimination claims are inadequately plead just because they lack detailed facts as to each prima facie element. See, e.g., Swierkiewicz v. Sorema N.A., 534 U.S. 506, 122 S.Ct. 992 (2002) (a Title VII plaintiff need not plead specific and detailed facts setting forth every prima facie element) The bases for Defendants' argument is that Plaintiff has not plead facts from which a reasonable person might infer intentional discrimination. In Swierkiewicz for example, the plaintiff satisfied the applicable pleading requirements as to his Title VII national origin claim because his complaint "detailed the events leading to his termination, provided relevant dates, and included the ages and nationalities of at least some of the relevant persons involved with his termination," so as to give his employer fair notice of what his claims were and the grounds upon

1.    **The FAC Does Not Allege Facts From Which Intentional Race-Based Retaliation Can Reasonably Be Inferred**

One way a plaintiff may create an inference of retaliation is to show the prima facie elements, including:  (1) that she engaged in a Title VII protected activity; (2) that an adverse employment action occurred; and (3) that a casual link exists between the Title VII protected activity and the employment action.  Long v. Eastfield College, 88 F.3d 300, 304-05 (5th Cir. 1996).  Vaguely, Plaintiff asserts that she was "also" non-renewed for opposing unlawful practices allegedly aimed at African-Americans, including but not limited to salary discrepancies, (unidentified) "discriminatory" treatment of African American employees, and (unidentified) failure by BSD to follow (some unidentified) state law.  (FAC ¶¶37-40).

Under notice pleading standards, Plaintiff fails to allege facts that give notice as to what type of practices she opposed and/or facts from which one might reasonably infer she was retaliated against for such opposition.  An employee engages in activity protected by Title VII if:  (1) she "opposed any practice made an unlawful employment practice" by Title VII, or (2) she "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII.  See 42 U.S.C. § 2000e-3(a); Eugene v. Rumsfeld, 168 F.Supp.2d 655, 681-82 (S.D. Tex. 2001) (plaintiff who claimed to have filed a grievance about perceived discriminatory employment practices and lodged complaints indisputably engaged in protected activity).  The FAC does not identify with any clarity the supposed "opposition" in which Plaintiff claims to have engaged.  For example, she fails to identify any purportedly "unlawful" practices, asserting only that they were "discriminatory" in nature.  She does not identify any bases for her assertion that BSD failed to "follow" state law, nor does she identify which state law.

Additionally, there are no facts alleged that give rise to an inference that Plaintiff was retaliated against because she engaged in protected activity.  Generally, courts consider three factors to help determine whether a plaintiff has shown that she was retaliated against, including (1) her

---

which they rested.  Swierkiewicz v. Sorema N. A., 534 U.S. at 513-14 (citation omitted).  Defendants reference the omissions of allegations related to the prima facie elements inasmuch as it helps to illustrate how Plaintiff fails to allege facts sufficient to justify a reasonable inference of intentional race-based discrimination or retaliation.

past disciplinary record; (2) whether the employer followed its typical policies and procedures in the employment decision; and (3) the timing of the claimed retaliation. Nowlin v. RTC, 33 F.3d 498, 507-08 (5th Cir. 1994) (citing Jenkins v. Orkin Exterminating Co., 646 F.Supp. 1274, 1277 (E.D. Tex. 1986)). The FAC does not allege when Plaintiff supposedly engaged in protected activity (i.e., whether it was ten days before her non-renewal or ten years), as she fails to supply any relevant dates. This omission is critical because, in some instances, the time lapse between purported protected activity and the claimed employment action precludes an inference of illegal retaliation as a matter of law.[18] See, e.g., Eugene, 168 F.Supp.2d at 682 (thirteen-month interval between complaint and failure to rehire did not satisfy causation requirement of prima facie retaliation claim).

Furthermore, because we do not know how or when Plaintiff supposedly opposed practices, or the identities of parties to whom she made known her opposition, we cannot know whether BSD representatives involved in the non-renewal decision, in fact, knew about purported opposition activity so as to infer they were motivated by race-based retaliatory animus. Lastly, by failing to include the how or when (i.e., the FAC lacks even a general timeframe), Plaintiff does not provide anything from which Defendants might derive notice about the alleged improper practices (such is the case because the FAC contains only vague generalizations about the practices). Even at the initial pleading stages, this type of pleading is insufficient. See generally Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.")

Defendants do not contend that Plaintiff must plead detailed and specific facts, or that she is required to allege and factually support all prima facie elements. However, a certain level of

---

[18] See Maniccia v. Brown, 171 F.3d 1364, 1369 (11th Cir. 1999) (fifteen-month period that elapsed between protected activity and adverse employment action precluded an inference of causation); Causey v. Balog, 162 F.3d 795, 803 (4th Cir. 1998) (thirteen-month delay between protected activity and termination too long for causation to be established); O'Connor v. Chicago Transit Auth., 985 F.2d 1362, 1370 (7th Cir. 1993) (nine-month gap between protected activity and adverse employment action precluded reasonable inference of causation).

specificity is necessary to support a reasonable inference of intentional, illegal retaliation in violation of Title VII. Regardless of the quality of the pleaded facts, the "inferences favorable to the plaintiff must be within the range of reasonable probability" and they cannot be so attenuated as to rest "merely upon speculation and conjecture." Harris v. Mississippi Valley State University, 873 So.2d 970, 981 (Miss. 2004) (dismissing state university employee's wrongful termination conspiracy claim where she asked the court to make attenuated inferences). Ultimately, one cannot offer unsupported and vague assertions, and then claim entitlement to attenuated inferences based on such assertions. Id. at 982. Given the omission of critical fact allegations, an objective reader could assume the truth of the fact allegations and still be unable to reasonably infer there was retaliation for engaging in protected Title VII activity.

### 2.   The FAC Does Not Allege Facts From Which Intentional Race-Based Discrimination Can Reasonably Be Inferred

Under Title VII, an employer may not subject an employee to adverse employment action because of race. See 42 U.S.C. § 2000e-2(a)(1).[19] Plaintiff asserts that her non-renewal was based, in part, on her race. Her assertions are wholly unsupported by her fact allegations, with the sole possible exception of her conclusory, subjective contention about "repeated efforts to purge" African-American administrators. (FAC ¶26). An employee can be discharged for good reason, for bad reason or for absolutely no reason … so long as it is not a discriminatory reason. N.L.R.B. v. Mueller Brass Co., 509 F.2d 704, 711 (5th Cir. 1975). This principle, coupled with the skeletal fact allegations and the plaintiff's ultimate burden of proving intentional discrimination, renders the fact allegations in the FAC woefully inadequate.

### F.   The FAC Does Not Allege Facts From Which An Equal Pay Act Violation May Reasonably Be Inferred

The EPA was enacted as an amendment to the Fair Labor Standards Act and requires that persons performing equal work must receive equal pay, unless a difference in pay is justified by a

---

19  To prove a prima facie case of discrimination, a plaintiff must show:  (1) membership in a protected class; (2) that she was qualified for her position; (3) that despite her qualifications, she was discharged; and (4) that the position was either held open or given to someone not a member of the protected class. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Meinecke v. H & R Block of Houston, 66 F.3d 77, 83 (5th Cir. 1995).

consideration other than gender. See 29 U.S.C. § 206(d). The EPA prohibits discrimination by employers against employees, stating:

> by paying wages to employees ... at a rate less than the rate at which [the employer] pays wages to employees of the opposite sex ... for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.

29 U.S.C. § 206(d)(1) (1994). To state a claim, a plaintiff must show: (1) her employer is subject to the EPA, (2) she performed work in position requiring equal skill, effort, and responsibility under similar working conditions; and (3) she was paid less than opposite sex employees and provide a basis of comparison. See 29 U.S.C. § 206(d)(1); Chance v. Rice University, 984 F.2d 151, 153 (5th Cir. 1993). The EPA supports a claim for gender discrimination only, not a claim for alleged disparity in payment based on race. See 29 U.S.C. § 206(d).

Here, Plaintiff does not even allege the elements of an EPA claim or facts that, if proven true, would support an EPA claim. The FAC is devoted to primarily to Plaintiff's unsupported assertions and statements about "racial injustice," including the BSD's purported desire to "purge" from its ranks all African-Americans. Plaintiff asserts that she was non-renewed for three reasons. (FAC ¶9). Nowhere does Plaintiff allege that she was paid less because of gender or sex. Plaintiff briefly alleges there was a pay disparity between herself and "White administrators of the BSD." (FAC ¶19). Without any supporting facts, she asserts in a conclusory manner that "[f]or years, [she] was not paid on an equal basis for work she performed as compared to White, male administrators at MSD." (FAC ¶¶41-42). These assertions are plainly inadequate. See Campbell v. City of San Antonio, 43 F.3d 973, 975 (5th Cir. 1995) ("However, 'the complaint must contain either direct allegations on every material point necessary to sustain a recovery ... or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial.'") (citation omitted). Ultimately, Plaintiff does not allege facts (or make unsupported assertions) from which one could infer gender-motivated pay inequality.

Lastly, the purported EPA claim is insufficiently plead to the extent it is impossible to determine whether Plaintiff has brought it in a timely manner. An EPA claim must be brought

within two years of the alleged violation (three years for willful violations).  See 29 U.S.C. §

255(a).  As noted above, Plaintiff asserts only that "[f]or years, [she] was not paid on an equal

basis" for work she performed as compared with Caucasian male administrators.  (FAC ¶¶41-42).

Based on this assertion, it is impossible to determine whether Plaintiff seeks to assert claims under

the EPA that are stale or not, there is simply no way to tell based on the allegations.

For all these reasons, Plaintiff's EPA claims should be dismissed.

## VI.    CONCLUSION

Based on the foregoing, Defendants Brookhaven School District and Superintendent Lea

Barrett respectfully request that this Court grant their Rule 12(b)(6) Motion to Dismiss for Failure to

State a Claim Upon Which Relief Can Be Granted, and to dismiss Plaintiff's claims asserted in her

First Amended Complaint in their entirety.

RESPECTFULLY SUBMITTED this the 3rd day of July, 2008.


**BROOKHAVEN SCHOOL DISTRICT AND
LEA BARRETT**

By:/s/ R. Jarrad Garner
       James A. Keith (MSB # 3546)
       R. Jarrad Garner (MSB # 99584)
       James P. Gallenbeck (MSB # 99161)
       Adams and Reese LLP
       111 East Capitol St., Ste. 350 (39201)
       P. O. Box 24297
       Jackson, MS  39225-4297
       Phone: (601) 353-3234

## CERTIFICATE OF SERVICE

I, R. Jarrad Garner, one of the attorneys for Defendants herein, certify that I electronically filed the foregoing FRCP 12(b)(6) Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted filed by Defendants Brookhaven School District and Lea Barrett with the Clerk of the Court using the ECF system which sent notification of such filing to the following:

Dale Danks, Jr., Esq.
Danks, Miller, Hamer & Cory
P. O. Box 1759
Jackson, Mississippi 39215-1759

This the 3rd day of July, 2008.

/s/ R. Jarrad Garner
R. JARRAD GARNER