# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF MISSISSIPPI
# JACKSON DIVISION

**DOROTHY L. ALEXANDER**                                               **PLAINTIFF**

**V.**                                        **CIVIL ACTION NO. 3:07cv640-DPJ-FKB**

**THE BROOKHAVEN SCHOOL DISTRICT**                                     **DEFENDANT**

## ORDER

This employment dispute is before the Court on Defendant The Brookhaven School District's Motion for Summary Judgment [58]. Having considered the parties' submissions and the applicable authority, the Court finds that the motion for summary judgment should be granted.

**I.    Facts & Procedural History**

Plaintiff Dr. Dorothy L. Alexander, an African-American woman, held the position of Assistant Superintendent with the Brookhaven School District (BSD) from 1987 until 2005. On February 28, 2005, she received notice from BSD Superintendent Lea Barrett that her employment contract would not be renewed for the 2005–2006 school year. Following her discharge, Plaintiff filed a charge of discrimination against Defendants with the Equal Employment Opportunity Commission (EEOC). The EEOC issued a Notice of the Right to Sue in August 2007.

Plaintiff filed the current action November 1, 2007 against BSD and Superintendent Barrett in her individual capacity. She then filed an amended complaint alleging causes of action for (1) race-based discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a); (2) retaliation under Title VII, 42 U.S.C. § 2000e-3(a); (3) First Amendment retaliation pursuant to 42 U.S.C. § 1983; and (4) unequal pay under the Equal Pay

Act of 1963 (EPA), 29 U.S.C. § 206(d). On January 28, 2009, this Court dismissed the First Amendment retaliation claim to the extent it was based on Plaintiff's alleged report of a teacher's unlawful conduct; dismissed the Equal Pay Act claim; and dismissed the claims against Barrett in her individual capacity. Defendant BSD has now moved for summary judgment on the remaining claims.

## II.     Standard

Summary judgment is warranted under Rule 56(c) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. "The party moving for summary judgment bears the initial burden of 'informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact.'" *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); *see also Custer v. Murphy Oil USA, Inc.*, 503 F.3d 415, 421 (5th Cir. 2007) (noting that the moving party bears the "burden of demonstrating that there is no genuine issue of material fact"). "The non-moving party must then come forward with specific facts showing there is a genuine issue for trial." *Washburn*, 504 F.3d at 508.

The non-movant is required to "submit or identify evidence in the record to show the existence of a genuine issue of material fact as to each element of the cause[s] of action." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003). The non-movant must also "articulate the precise manner in which the submitted or identified evidence supports his or her claim." *Smith ex rel. Estate of Smith v. United States*, 391 F.3d 621, 625 (5th Cir. 2004). Conclusory

allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

## III. Analysis

### A. First Amendment Retaliation

Alexander contends BSD decided not to renew her contract for the 2005–2006 school year in retaliation for testifying during a 2002 civil suit against BDS related to sexual harassment of a student ("the *Bradley* case"). Section 1983 imposes liability for violations of constitutional rights, including First Amendment retaliation claims; however, a local government unit may not be held liable on a theory of respondeat superior. *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978). Thus, for municipal liability to attach under this section, "a plaintiff must identify a policy or custom that gave rise to the plaintiff's injury." *Gelin v. Hous. Auth. of New Orleans*, 456 F.3d 525, 527 (5th Cir. 2006) (citing *Canton v. Harris*, 489 U.S. 378, 389 (1989)).

Alexander essentially concedes that she cannot demonstrate a BDS policy or custom, but she correctly observes that "a single action by a municipal official possessing final policymaking authority regarding the action in question constitutes the official policy of the municipality." *Brady v. Fort Bend Cnty*, 145 F.3d 691, 698 (5th Cir. 1998). Alexander then argues that Superintendent Barrett was such an official and that her non-renewal recommendation amounted to official policy. Pl.'s Resp. [67] ¶¶ 24–27. Plaintiff's argument fails because Superintendent Barrett was not vested with final policymaking authority. Instead, her recommendation was appealable to the school board.

3

Determining whether an official enjoys final policy making authority for a specific action turns on review of state and local law. *Bolton v. City of Dallas, Tex.*, 541 F.3d 545, 548 (5th Cir. 2008). Here, the Mississippi Code vests the final authority over employment decisions with the school board, not the superintendent. A Mississippi school board has among its "powers, authority and duties . . . [t]o select all school district personnel in the manner provided by law." Miss. Code Ann. § 37-7-301(p) (2010). It is the superintendent's duty "to administer the schools within his district *and to implement the decisions of the school board.*" *Id.* § 37-9-14(1) (emphasis added); *see also id.* § 37-9-14(2)(a) (describing superintendent's duty to enter into contracts with assistant superintendents after they are selected and approved), § 37-9-15 (superintendent "shall recommend to the school board" assistant superintendents for approval), § 37-9-23 ("superintendent shall enter into a contract with each assistant superintendent . . . who is elected and approved for employment by the school board").

Indeed, because school district employees like Alexander are entitled to a hearing before the school board on a superintendent's recommendation of non-renewal, superintendents lack final authority. *See Worsham v. City of Pasadena*, 881 F.2d 1336, 1341 (5th Cir. 1989) ("The existence of effective review procedures prevents the employees from wielding final responsibility . . . ."); *see also Gelin*, 456 F.3d at 531 (finding no municipal liability upon failure to appeal supervisor's termination decision to board with final policymaking authority). Accordingly, courts have long recognized that "the ultimate power to terminate an employee lies with the school board." *Yarbrough v. Camphor*, 645 So. 2d 867, 870 (Miss. 1994), *cited in Floyd v. Amite Cnty. Sch. Dist.*, 581 F.3d 244, 249 (5th Cir. 2009) *and Knight v. Little*, No. 4:06CV32TSL-LRA, 2007 WL 735676, at *2 n.1 (S.D. Miss. Mar. 8, 2007).

4

Despite this authority, Alexander argues that Superintendent Barrett's non-renewal recommendation was not subject to review. She first argues that the recommendation was "made final without any further action of BSD" and that "BSD's position was that the Board had no authority to change Superintendent Barrett's non-renewal." Pl.'s Resp. [67] ¶ 18. Alexander later contends that Superintendent Barrett was vested with final authority because the "Board of Trustees was advised that it was required to defer to the Superintendent's non-renewal decision as a matter of State law." *Id.* ¶ 26. The record does not support Alexander's interpretation.

Plaintiff's own record evidence demonstrates that Superintendent Barrett's recommendation was appealable. *Id.* Ex. 11, at 2. Plaintiff failed, however, to perfect her appeal or appear at the hearing. *Id.* Ex. 35, at 3–4. As a result, the school board received evidence regarding Plaintiff's default, and the hearing officer concluded that Plaintiff's procedural breaches and non-appearance made "the nonrenewal recommendation final." *Id*. at 13. Thus, Plaintiff's own default is the only reason the recommendation was not further reviewed in this instance. Under these facts, the case is similar to *Gelin*, where a former employee failed to appeal a termination decision. 456 F.3d at 531. The Fifth Circuit affirmed summary judgment, finding that the board did not delegate final policymaking authority and that the supervisor had not become the *de facto* policymaker. *Id*.

Pursuant to Mississippi law, Superintendent Barrett did not have final policymaking authority. *Compare Brady*, 145 F.3d at 699 (finding that sheriff was final policy maker where "Texas law unequivocally vests the sheriff with final policymaking authority" to hire and fire), *with Worsham*, 881 F.2d at 1341 ("The existence of effective review procedures prevents the

5

employees from wielding final responsibility.") Plaintiff has failed to demonstrate a custom or policy for which BSD is liable under § 1983.

B. Title VII

Plaintiff claims that she suffered race based discrimination in violation of Title VII of the Civil Rights Act of 1964 and that BSD retaliated against her for seeking a raise. In her one page response to this portion of BSD's motion, Plaintiff addresses both issues collectively making the following two arguments: (1) that white employees were treated more favorably than her; and (2) that the jury can presume discriminatory intent because she has demonstrated pretext. Pl.'s Resp. [67] at 12.

1. Race Discrimination

Because she presents no direct evidence of discrimination, Plaintiff must first establish a prima facie case of discrimination under the familiar *McDonnell Douglas* burden shifting analysis. *Reeves*, 530 U.S. at 142. To establish a prima facie case of Title VII discrimination, she must show:

> (1) [s]he is a member of a protected class, (2) [s]he was qualified for the position at issue, (3) [s]he was the subject of an adverse employment action, and (4) [s]he was treated less favorably because of h[er] membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances.

*Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009).[1] The parties dispute the fourth element.

---

[1] Title VII plaintiffs may alternatively satisfy the fourth element with proof that they were replaced by someone outside their protected group. *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). Plaintiff offered no such argument or evidence.

The test for determining whether similarly situated employees outside the protected class were treated more favorably under nearly identical circumstances is stringent under Fifth Circuit jurisprudence:

> Employees with different supervisors, who work for different divisions of a company or who were the subject of adverse employment actions too remote in time from that taken against the plaintiff generally will not be deemed similarly situated. Likewise, employees who have different work responsibilities or who are subjected to adverse employment action for dissimilar violations are not similarly situated. This is because we require that an employee who proffers a fellow employee as a comparator demonstrate that the employment actions at issue were taken "under nearly identical circumstances." The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories. And, critically, the plaintiff's conduct that drew the adverse employment decision must have been "nearly identical" to that of the proffered comparator who allegedly drew dissimilar employment decisions. If the difference between the plaintiff's conduct and that of those alleged to be similarly situated accounts for the difference in treatment received from the employer, the employees are not similarly situated for the purposes of an employment discrimination analysis.

*Id.* at 259–60 (citations and quotations omitted).

In response to BSD's argument that Alexander failed to identify a similarly situated comparator, Plaintiff merely states that "it can hardly be denied that [her] lengthy discussion of white employees who were not terminated for far worse actions . . . constitute [sic] valid comparisons for Title VII purposes." Pl.'s Resp. [67] ¶ 48 (citing Alexander Dep. 18–29). She does not elaborate or offer specific facts.[2]

---

[2]The non-movant is required to "submit or identify evidence in the record to show the existence of a genuine issue of material fact as to each element of the cause[s] of action." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003). The non-movant must also "articulate the precise manner in which the submitted or identified evidence supports his or her claim." *Smith ex rel. Estate of Smith v. United States*, 391 F.3d 621, 625 (5th Cir. 2004). Plaintiff has

In her deposition testimony, Plaintiff referenced the treatment of the following five white employees: former superintendent Walter Samuel Bounds; former district finance director Sandra Hallowell, née Earnest; former transportation director Gabriel Terrell; JROTC director Major Westfall; and former teacher and assistant principal Walter Scott Merrell. Review of the record demonstrates that these five were not similarly situated to Plaintiff.

Superintendent Barrett made the decision not to renew Dr. Alexander's contract in February 2005, citing four reasons:

> Failure to properly investigate and take appropriate action regarding allegations of inappropriate conduct by a school employee, subjecting the school district to potential liability.
>
> Calling the parents of a student while an investigation of alleged employee misconduct was underway, revealing statements allegedly made by an employee of the district and commenting on the conduct of the investigation rather than taking steps to ensure the investigation was handled properly.
>
> Offering to alter or destroy a document developed as part of an investigation of alleged employee misconduct.
>
> Disrespectful correspondence to your superintendent by letter dated October 4, 2004.

Non-Renewal Letter, Def.'s Mot. Summ. J. [58] Ex. 9, at 1.

According to Plaintiff, sometime in the mid-1990s finance director Earnest used school resources to try to find a job for her husband within the city or county and also somehow to influence a jury pool that would hear a case involving her husband. Alexander Dep.

---

failed to meet this standard with respect to the Title VII claims. Nevertheless, the Court has read the entire record. To the extent evidence may have been overlooked, the Court had "no duty 'to sift through the record in search of evidence to support a party's opposition to summary judgment.'" *Fuentes v. Postmaster Gen. of U.S. Postal Serv.*, 282 F. App'x 296, 300 (5th Cir. 2008) (citations omitted).

19:17–20:18, Sept. 16, 2009. Plaintiff "thinks" Earnest pled no contest to criminal charges, receiving a fine and probation, but kept her job. *Id.* at 20:20–21:1. Also in the mid-1990s, and possibly continuing to 2001, transportation director Terrell had the head mechanic at the transportation division work on automobiles that Terrell would later sell for personal gain, and the transportation division would perform similar services for other employees and friends. *Id.* at 21:2–22:11. Plaintiff further contends that in the mid-1990s or as late as 1997, then-superintendent Bounds was retained by the school board despite "an illicit affair with a former superintendent of Lawrence County Schools." *Id.* at 23:15–24:19. None of these comparators held the same position as Plaintiff, and all exhibited qualitatively different conduct occurring during remote times. Moreover, these decisions were made before Superintendent Barrett rose to that position in 2004.

Westfall and Merrell arguably offer slightly more relevant comparisons, although neither held the same position as Plaintiff. Plaintiff claims that in December 2001,Westfall failed to report alleged harassment by the same teacher. Plaintiff claims that Merrell had "grave differences with his supervisor [Principal Johnny Waller]" and sent a "disrespectful" email about Waller containing "a lot of egregious things" to Superintendent Barrett. *Id.* at 25:8–28:20.[3] Even taking Plaintiff's conclusory and unsubstantiated allegations at face value and assuming Westfall and Merrell were similarly situated to Plaintiff in all other respects, neither was accused

---

[3]Plaintiff's knowledge of this email is admittedly hearsay, Alexander Dep. 26:19–28:20, which renders it incompetent to defeat summary judgment. *Geiserman v. MacDonald*, 893 F.2d 787, 793 (5th Cir. 1990) (explaining that "[m]aterial that is inadmissible will not be considered on a motion for summary judgment" ) (quoting 10A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2727, at 156 (1983)); *see also Roberts v. City of Shreveport*, 397 F.3d 287, 295 (5th Cir. 2005) (refusing to consider newspaper articles because they constitute hearsay and are not proper summary judgment evidence).

9

of improperly contacting parents concerning an investigation or destroying evidence in an ongoing civil suit. Plaintiff has not established a prima facie case of race based discrimination.

Plaintiff's only other argument with respect to the motion to dismiss her Title VII race claim is that proof of pretext "permits the jury to find discriminatory intent." Pl.'s Resp. [67] at 12. This argument seemingly attempts to skip the prima facie case and jump directly to the pretext stage of the *McDonnel Douglas* burden shifting analysis. Yet *Stanton v. New Palace Casino, LLC.*, which Plaintiff cites to support her argument, states that "[e]vidence demonstrating that the employer's explanation is false or unworthy of credence, *taken together with the plaintiff's prima facie case*, is likely to support an inference of discrimination [or retaliation] even without further evidence of the defendant's true motive." 187 F. App'x 350, 358 (5th Cir. 2006) (emphasis added) (citations and quotations omitted). Indeed, "[t]o survive summary judgment under *McDonnell Douglas*, the plaintiff must first present evidence of a prima facie case of discrimination." *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 317 (5th Cir. 2004). Plaintiff has failed to do so.

Furthermore, even if a prima facie case existed, Plaintiff has failed to demonstrate pretext. Plaintiff "must put forward evidence rebutting each of the nondiscriminatory reasons" Defendant proffered. *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219–20 (5th Cir. 2001). Plaintiff made no such showing, and she never really denies that she committed certain acts upon which the non-renewal was based. Instead, she generally argues that the reasons were not the true reasons or that they were not worthy of discharge. However, the

> job [of] a reviewing court conducting a pretext analysis is not to engage in second-guessing of an employer's business decisions. Our anti-discrimination laws do not require an employer to make proper decisions, only non-retaliatory

10

ones. Therefore, [Plaintiff] must do more than simply argue that [her employer] made an incorrect decision.

*LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007) (internal citations omitted).

Plaintiff offered no further argument in support of her Title VII claims. She did make certain arguments, however, when addressing her § 1983 First Amendment claim that *could* have application in this context. The Court will review those arguments in the interest of thoroughness.

According to Plaintiff, Superintendent Barrett's predecessor, Sam Bounds, was aware of the conduct for which Plaintiff was non-renewed but took no action. *See* Pl.'s Resp. [67] ¶¶ 42–45. Plaintiff analogizes this fact to *Rikabi v. Nicholson*, where pretext was demonstrated in part because the employee received an "outstanding" performance rating prior to discharge. 262 F. App'x 608, 611 (5th Cir. 2008) (cited in Pl.'s Resp. [67] ¶ 43). Aside from the fact that Plaintiff has presented no evidence demonstrating that she was considered "outstanding," the argument is based on a misinterpretation of the undisputed record.

There is no dispute that Bounds knew the concerns regarding Plaintiff and believed she was "stirring the situation" with respect to the *Bradley* case. However, he also testified that he elected not to pursue those issues because he was "focused in on getting [the *Bradley* case] resolved." Bounds Dep. 18:1–2. More significantly, Plaintiff's argument fails to note that Bounds had already announced his resignation when Plaintiff allegedly offered to destroy evidence in the *Bradley* case. *Id.* at 23:6–25:23. Significantly, Bounds testified that he told Barrett, "If I was going to be remaining here, I would be pursuing this further." *Id.* at 25:20–21. When Barrett became superintendent, she did pursue the issues further the first time Alexander's

contract came up for review. These facts are not analogous to the "outstanding" performance rating given in *Rikabi v. Nicholson*.

Plaintiff must demonstrate pretext as to each proffered non-discriminatory reason. *Wallace*, 271 F.3d at 219–20. Plaintiff has failed to do so, and summary judgment of the discrimination claim is therefore appropriate.

### 2    Retaliation

Plaintiff also claims that she was retaliated against in violation of Title VII. To establish a prima facie case of retaliation, Alexander must show that "(1) she participated in a Title VII protected activity, (2) she suffered an adverse employment action by her employer, and (3) there is a causal connection between the protected activity and the adverse action." *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009). Defendant challenges Plaintiff on the first and third prongs of the analysis.

Assuming without deciding that Plaintiff engaged in protected activity, she has not demonstrated causation.[4] Though Plaintiff addressed the Title VII discrimination and retaliation claims collectively, neither of the arguments she presented is sufficient to save the Title VII retaliation claim. First, her comparisons are to white employees, not employees who have not engaged in protected activity. Second, her pretext arguments fail to establish the necessary causal connection between her protected activity and Barrett's decision to non-renew.

---

[4]Plaintiff asserts that her request for a raise was protected activity. For the most part, that request was based on her experience and cannot be considered protected activity under Title VII. She did, however, mention that a raise would be consistent with the BSD's "Equal Opportunity Employment." Pl.'s Resp. [67] Ex. 20, at 4. Although she does not explain this assertion, the Court will assume, *arguendo*, that she has engaged in protected activity.

Ultimately, Plaintiff never directly addressed the Title VII retaliation claim.[5] As such, Plaintiff has not addressed causation and has failed to "submit or identify evidence in the record to show the existence of a genuine issue of material fact" as to this essential element. *Malacara*, 353 F.3d at 404. Having failed to demonstrate a prima facie case of retaliation, and having further failed to demonstrate pretext as to this claim, the Court finds that BSD's motion should be granted.

IV.     **Conclusion**

The Court has considered all of Plaintiff's arguments. Those not expressly addressed would not change the results. For the reasons stated above, Defendant The Brookhaven School District's motion for summary judgment is granted. A separate judgment will be entered in accordance with Federal Rule of Civil Procedure 58.

**SO ORDERED AND ADJUDGED** this the 8th day of September, 2010.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE

---

[5]Plaintiff does argue that she suffered retaliation under § 1983 for exercising her First Amendment right to participate in the *Bradley* case. However, the arguments raised in conjunction with the § 1983 claim are not factually or legally relevant to the Title VII retaliation claim.